IN THE COURT OF COMMON PLEAS
FRANKLIN COUNTY, OHIO

MORSO HOLDING CO.
Three Limited Parkway
Columbus, Ohio 43230,

    Plaintiff,

-vs-

EASTON WAY HOTEL, LLC
600 Madison Avenue
New York, New York 10022,

    Defendant.

Case No. _____

Judge _____

## COMPLAINT FOR EXPEDITED DECLARATORY JUDGMENT

### Introduction

1. This is an action for declaratory judgment that will pave the way for construction of two premier full-service hotels at Easton. Project costs will exceed $100 million, providing numerous construction jobs and needed hotel facilities. Upon completion the project will provide 275 new permanent, full-time jobs. But the project is blocked by a dispute between the parties as to whether it is precluded by a specific provision of a 1998 agreement relating to the Hilton Hotel at Easton that Defendant operates. Given the continuing disagreement as to the applicability and effect of this provision, Plaintiff seeks an expedited declaratory judgment permitting the project to proceed.

### The Parties, Venue

2. Plaintiff MORSO Holding Co. ("MORSO") is a Delaware corporation with its principal place of business in Columbus, Ohio. MORSO is the wholly owned subsidiary of

LBrands, Inc. through which the company has developed Easton Town Center and its adjacent stores and amenities. MORSO owns the land on which the project will be built and will have an indirect economic interest in it.

3. Defendant Easton Way Hotel, LLC ("Easton Way") is a Delaware limited liability company with its principal place of business in New York, New York.

4. Venue lies in this Court pursuant to Civ.R. 3(B)(3), (5) and (7).

## Background

### A. The Hilton LLC Agreement

5. In late 1998, a subsidiary of MORSO called Limhil, Inc. ("Limhil") and Easton Way formed Columbus Easton Hotel, LLC (the "Hilton LLC") for the development and ownership of a full-service hotel called the Hilton Columbus at Easton (the "Hilton"). Limhil and Easton Way are the only two members of Hilton LLC with Limhil holding 40% of the membership interest and Easton Way holding the remaining 60%.

6. The Limited Liability Company Agreement (the "Hilton LLC Agreement") of Hilton LLC, which was carefully crafted by highly qualified legal counsel, became effective as of October 9, 1998. The Hilton LLC Agreement is voluminous being made up of 64 single-spaced pages together with approximately 175 pages of attachments and is already in the possession of Easton Way so only the pertinent excerpts are attached as Exhibit A. The Hilton LLC Agreement has been amended three times since it was originally adopted, but the amendments do not alter the provisions at issue in this Complaint. Rather, the key provision of the Hilton LLC Agreement at issue here, Section 3.5, remains unchanged since 1998.

7. Section 3.5 of the Hilton LLC Agreement starts by stating directly that Limhil and Easton Way (and their affiliates including MORSO) are free to engage in, and own, businesses

2

that are competitive with the Hilton: "Members [*i.e.*, Limhil and Easton Way] shall not in any way be prohibited from or restricted in engaging or owning an interest in any other business venture of any nature, including, without limitation, any venture which might be competitive with the business of the [Hilton LLC]." Section 3.5(d) of the Hilton LLC Agreement makes Section 3.5 applicable to not only Limhil but also MORSO as the sole owner of Limhil.

8. This general authorization to compete with the Hilton LLC is only limited by the specific, limited provisions of Section 3.5 that set forth a right of first offer if any party wishes to undertake a "Competitive Project." "Competitive Project" is defined as a "full service hotel project that is located within the Restricted Area [a defined term] during the Restricted Period [another defined term]."

9. The "Restricted Area" is defined as "the land that is located (i) within the Easton development of which the Land [on which the Hilton sits] is a part and (ii) south of Morse Road." [Hilton LLC Agreement, Section 13.1(ccccc)]

10. The "Restricted Period" means the period of time from the effective date of the Hilton LLC Agreement through the twentieth anniversary of the opening of the Hilton. [Section 13.1(bbbbb)] The Hilton opened on July 21, 2000 so the Restricted Period expires on July 21, 2020.

11. If a member of the Hilton LLC wishes to pursue a Competitive Project, or if an affiliate of a member (such as MORSO) wishes to do so, then the provisions of Section 3.5(b)-(d) apply. Section 3.5 is written to apply to a situation where Easton Way, Limhil or an affiliate such as MORSO is the party making the Competitive Project offer. Since this case concerns new hotels proposed by MORSO (though as explained below, the new hotels are not Competitive Projects because they will not be located in the Restricted Area), the names of the parties have

Franklin County Ohio Clerk of Courts of the Common Pleas- 2016 Aug 10 2:44 PM-16CV007461
0D178 - H69

been substituted in brackets below for ease of reading to illustrate the mechanics of Section 3.5 in the scenario where MORSO is the offeror:

a. The procedures provided in Section 3.5(b)-(d) are commenced by MORSO's delivery to Easton Way of a notice setting forth the material terms of the Competitive Project: "The Member that wishes to develop a Competitive Project [here, MORSO] ... shall first deliver to [Easton Way] ... a Notice (the 'CP Offer Notice') thereof **setting forth the material terms of such Competitive Project**, including, without limitation, specification of the capital investment which [MORSO] is requiring [Easton Way] to make in respect of the Competitive Project and the percentage interest in the Competitive Project that will be delivered in return for such capital investment (the 'Proposed CP Investment')." [Section 3.5(b) (emphasis added)]

b. Easton Way then has 45 days to either accept the offered terms or reject them: "For a period of forty-five (45) days after [Easton Way's] receipt of the CP Offer Notice, [Easton Way] shall have the right to elect in writing either (x) to enter into the Competitive Project at the Proposed CP Investment **and upon the other terms set forth in the CP Offer Notice** or (y) not to enter into the Competitive Project at the Proposed CP Investment and upon the other terms set forth in the Offer Notice...." [Id. (emphasis added)] Other than the two exceptions described below, the parties agreed that a Competitive Project offer would be a "take it or leave it" proposal with no opportunity for a counterproposal.

c. The Hilton LLC Agreement permits a recipient of a Competitive Project offer to modify only two specific terms of the offer.

i. First, Easton Way reserved the right to own 60% of the entity developing a Competitive Project: "if the percentage interest in the Competitive Project that is included in the Proposed CP Investment is not equal to [60%] ..., then [Easton Way] may elect to enter into the Competitive Project at the Proposed CP Investment and upon the other terms set forth in the CP Offer Notice as appropriately adjusted (including, without limitation, increasing or decreasing, as applicable, the amount of the required capital investment that will be required of [Easton Way]) so as to provide [Easton Way] a percentage interest in the Competitive Project equal to [60%]...." [Id.]

ii. Second, if the new hotel project was structured to include a franchise relationship and if Easton Way was not qualified to own, operate **or** manage a hotel affiliated with the proposed franchisor, then Easton Way reserved the right to select a substitute franchisor: "if [the] Proposed CP Investment requires the affiliation with a particular franchisor and [Easton Way] is not qualified to own, operate or manage a hotel that is affiliated with such franchisor, then [Easton Way] may elect to enter into the Competitive Project at the Proposed CP Investment and upon the other terms set forth in the CP Offer Notice as appropriately adjusted to substitute another franchisor whose quality standards are substantially equivalent to that of the franchisor described in the CP Offer Notice and in respect of which the CP Offered Member is qualified to own, operate or manage a hotel that is affiliated with such substitute franchisor." [Id.]

    d. Upon receiving a CP Offer Notice, there are only four options that Easton Way may follow to elect to participate in the Competitive Project: (i) it may elect to participate on the terms set forth in the CP Offer Notice, (ii) it may elect to participate on the terms set forth in the CP Offer Notice as adjusted to receive a 60% ownership interest, (iii) it may elect to participate on the terms set forth in the CP Offer Notice as adjusted to substitute an alternative franchisor (if applicable), or (iv) it may elect to participate on the terms set forth in the CP Offer Notice as adjusted to receive a 60% ownership interest and as adjusted to substitute an alternative franchisor (if applicable).

    e. If Easton Way does not deliver a written election that complies with the requirements of Section 3.5 within the 45 day period, then Easton Way is deemed to have rejected the offer: "If [Easton Way] fails to make **any such written election** within such forty-five (45) day period, [Easton Way] shall be deemed to have elected not to enter into the Competitive Project." [Id. (emphasis added)]

    f. If Easton Way elects not to participate in the Competitive Project, or is deemed to have elected not to participate (*i.e.*, by failing to deliver a valid written election within the 45 day period), then MORSO may proceed with the Competitive Project so long as, within 180 days, MORSO "enter[s] into an agreement for the development of such Competitive Project with an unrelated third party in an arm's length transaction for not less than ninety-five percent (95%) of the Proposed CP Investment and upon the other terms set forth in the CP Offer Notice…." [Section 3.5(c)]

12.     The Hilton LLC Agreement contains an integration clause that confirms that the Hilton LLC Agreement "contains the entire understanding between the parties and supersedes

any prior understandings and agreements between them respecting the subject matter [t]hereof, all of which are merged [t]herein." [Section 16.6] The Hilton LLC Agreement goes on to confirm that "[t]here are no representations, agreements, arrangements or understandings, oral or written, between or among the parties [t]hereto relating to the subject matter of [the Hilton LLC] Agreement, except as expressly set forth [t]herein." [Id.]

   13. Following execution of the Hilton LLC Agreement, the Hilton at Easton was constructed and opened for business in 2000. Inasmuch as it has been the only full-service hotel in Easton, it has been highly successful and very lucrative for Easton Way, as manager of the hotel.

   14. Demand for top-tier hotel accommodations in central Ohio exploded since the Hilton opened. Nearly 2000 new full-service rooms have been constructed. Although MORSO has approached Easton Way about adding new full-service hotels at Easton to participate in this growth, Easton Way rejected MORSO's overtures.

**B. The Proposed Hotels And The School Site**

   15. Fast-forward to 2016. MORSO now seeks to develop two new full-service hotels on land (Franklin County Parcel Number 010-015156-00) that is the site of the former Columbus City Schools Northeast Career Center (the "School Site"). One of the new hotels is to be owned by an entity to be called Loop Hotel W, LLC ("Hotel W") and the other new hotel, a luxury hotel, is to be owned by an entity to be called Loop Hotel S, LLC ("Hotel S").

   16. In 1998, when the parties entered into the Hilton LLC Agreement, MORSO did not own the School Site, had no contractual right to acquire it, and had no expectation that it ever might acquire it. Rather, the school site was public property, owned by the Columbus Board of Education.

7

17. Thus, the School Site is not within the defined scope of the "Restricted Area" to which the right of first offer provisions of Section 3.5 of the Hilton LLC Agreement apply. The "Restricted Area" is defined as "the land that _is_ located (i) within the Easton development of which the [Hilton] Land _is_ a part and (ii) south of Morse Road." [Hilton LLC Agreement, Section 13.1(ccccc) (emphasis added)]

18. The repeated use of the present tense ("is") reflects that the parties agreed that the scope of the Restricted Area was static. If land was part of the Easton development **in 1998**, it was part of the Restricted Area. If land was not part of the Easton development **in 1998**, it was not part of the Restricted Area.

19. If the parties to the Hilton LLC Agreement had intended to include subsequent expansions to the Easton development, it would have been simple for the parties to express this intention in the written terms of the Hilton LLC Agreement. Likewise, if the parties had intended to impose restrictions on new full service hotel projects within a specified radius of the Hilton, they could have done so. They did neither.

20. Inasmuch as the School Site was not owned by MORSO when the Hilton LLC Agreement was executed in 1998, the School Site is not part of the "Restricted Area" and none of the restrictions on development of competitive hotels contained in Section 3.5 applies.

21. Seven years after the Hilton LLC Agreement was negotiated and signed, MORSO acquired the School Site from the Columbus Board of Education in late 2005. The career center continued to operate on the School Site for the next three years.

**C. The Offers**

22. Since the proposed new hotels (Hotel W and Hotel S) are to be located on the School Site, and not on land within the Restricted Area, the right of first offer provisions of

Section 3.5 are inapplicable, and MORSO is free to develop the hotels without making a "Competitive Project" offer to Easton Way.

23. Nonetheless, in recognition of the long-term relationship MORSO has enjoyed with Easton Way, and in an effort to avoid unnecessary disputes regarding the applicability of Section 3.5, on July 6, 2016 MORSO delivered to Easton Way two CP Offer Notices (one for Hotel W and one for Hotel S) offering Easton Way the opportunity to participate in the proposed hotels if it wished. In a cover letter with which the CP Offer notices were delivered, MORSO stated it would follow the provisions of Section 3.5 as though they were applicable as an accommodation to Easton Way but expressly reserved the right to challenge the applicability of Section 3.5 if the parties were unable to reach a mutually satisfactory agreement through the mechanisms of that Section. The cover letter explained that the restrictions of Section 3.5 were inapplicable because the new hotels were to be constructed on the School Site that MORSO did not acquire until 2005 that is located generally to the east of Easton Town Center.

24. Easton Way is in possession of the CP Offer Notices. In view of confidentiality obligations owed by MORSO to the proposed hotel operator, the CP Offer Notices are not attached to this Complaint.

25. The CP Offer Notices delivered to Easton Way each set forth the material terms of their respective Competitive Projects and offered to provide additional information upon execution of a confidentiality agreement required by the proposed hotel operator (which Easton Way has elected not to sign).

26. One of the material terms of each CP Offer Notice is that a nationally prominent hotel operator will operate each of the proposed new hotels. As such there will not be a franchise for either of the proposed new hotels. MORSO has finalized the agreements with the

hotel operator. Each contains milestone dates by which specified phases of development of each new hotel must be completed. Expedited consideration of this action is required to assure that the projects can move forward timely.

27. Another material term of each CP Offer Notice is that MORSO affiliates will manage the LLCs that own each of the hotels.

28. The CP Offer Notice for each of the proposed new hotels offers Easton Way the opportunity to participate as a 5% owner of the new project entities. Consistent with Section 3.5, the cover letter with which the CP Offer Notices were delivered states that Easton Way may elect to participate in each hotel with a 60% ownership interest if it desires.

**D. Easton Way Responds, But Does Not Make A Valid Election To Participate In Hotel W**

29. On July 15, 2016, Easton Way responded to the July 6 CP Offer Notices by requesting more information about the hotel operator of the proposed new hotels. A true and correct copy of Easton Way's July 15 letter is attached as Exhibit B.

30. The July 15 letter expressly stated Easton Way has a right to manage any new full service hotel built at Easton: "Section 3.5 of the [Hilton] LLC Agreement contemplates that the terms of any Competitive Project will be comparable to the terms of our existing partnership, including with respect to hotel management arrangements" – *i.e.*, that the "Competitive Project will engage [Easton Way] or its affiliates to provide hotel management in respect of such Competitive Project."

31. But nothing in Section 3.5 requires or "contemplates" that the terms of any "Competitive Project will be comparable to ... our existing ... hotel management arrangements...." Section 3.5 only provides Easton Way with a right of first offer to accept or

10

reject the material terms MORSO offers. Easton Way may alter only two narrowly defined material terms of a Competitive Project offer.

32.    First, if Easton Way is offered an ownership stake that is different from its percentage ownership of the Hilton (60%), then Easton Way may elect to participate as a 60% owner but must do so "**upon the other terms set forth in the CP Offer Notice** as appropriately adjusted … **so as to provide [Easton Way] a percentage interest in the Competitive Project equal to [60%]**." [Section 3.5 (emphasis added)]  The contractual right to be a 60% owner of a new hotel project does not confer the right upon Easton Way to manage the hotel. Rather, Section 3.5 only permits adjustment of terms to maintain Easton Way's "percentage interest."

33.    Second, if the new hotel project was structured to include a franchise relationship (and under MORSO's proposals, the project does not involve a franchise) and if Easton Way was not qualified to own, operate **or** manage a hotel affiliated with the proposed franchisor, then Easton Way reserved the right to select a substitute franchisor.  The contractual carve-out that authorizes Easton Way, under certain circumstances, to select a substitute franchisor, in no way confers upon Easton Way the right to manage the new hotel.

34.    Since neither Section 3.5 nor any other provision of the Hilton LLC Agreement grants Easton Way the right to operate either of the proposed new hotels, on July 20, 2016, MORSO sent Easton Way a letter stating that Easton Way had "misconstrue[d] Section 3.5, implying restrictions that are not stated therein or elsewhere in the [Hilton] LLC Agreement." A true and correct copy of the July 20 letter is attached as Exhibit C.  MORSO reiterated in the July 20 letter that it "do[es] not envision a franchise relationship with the proposed [hotel] operator," and also stated that MORSO was "confident that the proposed operator will have no objection to ownership by Easton Way."

11

35. On August 2, 2016, Easton Way delivered to MORSO its "response to the Competitive Project Offer for [Hotel W]." A true and correct copy of the August 2 letter is attached as Exhibit D.

36. The August 2 letter purports to elect participation in Hotel W but not on the terms set forth in the CP Offer Notice. Rather, the August 2 letter counters MORSO's proposal by conditioning Easton Way's participation on its right to manage the project and control its ownership – terms inconsistent with the Competitive Project Offer and terms rejected in MORSO's July 20 letter. The August 2 letter states: "[Easton Way] elect[s] to participate in [Hotel W] with a 60% ownership interest and (as contemplated by Section 3.5 of the … [Hilton LLC Agreement] and notwithstanding the inconsistent terms set out in your proposed term sheet dated July 6, 2016 [Easton Way's] acceptance is expressly conditioned upon [Easton Way's] ownership interest in [Hotel W] being on substantially the same terms as [Easton Way's] existing 60% ownership interest in [the Hilton LLC], including, without limitation, (x) the same or equivalent management, economic and control rights for [Easton Way] and (y) management of [Hotel W] by an affiliate of [Easton Way.]"

37. Easton Way's August 2 letter is a counter-offer which does not accept the materials terms of the Hotel W CP Offer Notice and therefore is not a valid election to participate under Section 3.5. As such Easton Way is "deemed to have elected not to enter into the [Hotel W] Competitive Project." [Section 3.5(b)]

38. The July 15 and August 2 letters make clear that Easton Way's position is that Section 3.5 is applicable even though the land on which the new hotelss will be constructed was not acquired until years after the Hilton LLC Agreement established the parameters of the Restricted Area and, as such, is not within the purview of Section 3.5.

39. The parties have fundamental disagreements, for which expedited declaratory relief is necessary, about (i) whether the School Site is within the "Restricted Area" and if so, (ii) whether Easton Way's August 2 letter responding to the Hotel W Competitive Offer constitutes a valid election to participate.

## COUNT ONE
### Declaratory Judgment That "Competitive Project" Provisions Are Inapplicable

40. Each of the foregoing paragraphs is incorporated by reference as though re-alleged herein.

41. The Competitive Project provisions of Section 3.5 of the Hilton LLC Agreement only apply to new full-service hotel projects located within the "Restricted Area" – *i.e.*, within the Easton development as it existed in 1998.

42. The School Site was publically owned property until 2005 and was not part of the Easton development in 1998 when the Hilton LLC Agreement was negotiated and signed.

43. The definition of "Restricted Area" in the Hilton LLC Agreement did not include the School Site and, as such, the provisions of Section 3.5(b)-(d) do not apply to full-service hotel projects such as those MORSO proposed on the School Site.

44. Easton Way nonetheless asserts that the provisions of Section 3.5(b)-(d) apply to the School Site, describing the proposed new hotels as being located "within the Easton development." [See Exhibits B and D]

45. A justiciable controversy exists concerning whether the School Site is located within the "Restricted Area," and declaratory relief from this Court will resolve this controversy and eliminate the resulting uncertainty.

46. As alleged herein, a real, substantial, and immediate controversy is presented regarding the rights, duties, and liabilities of the parties.

13

47. MORSO therefore requests a declaratory judgment from this Court pursuant to Chapter 2721 of the Ohio Revised Code and Civil Rule 57 that (i) the School Site (*i.e.*, Franklin County Parcel Number 010-015156-00) is not located within the "Restricted Area" within the meaning of the Hilton LLC Agreement, (ii) Hotel W and Hotel S therefore are not "Competitive Projects" within the meaning of the Hilton LLC Agreement, (iii) MORSO may develop one or more full service hotels on the School Site without the necessity of complying with the Competitive Project provisions of Section 3.5 of the Hilton LLC Agreement, and (iv) MORSO may proceed with development of Hotel W and Hotel S without participation by Easton Way.

## COUNT TWO
### Declaratory Judgment That Easton Way Is Deemed To Have Elected Not To Participate In Hotel W

48. Paragraphs 1 through 39 are incorporated by reference as though re-alleged herein.

49. MORSO also requests a declaratory judgment that the August 2 letter of Easton Way does not constitute a valid election to participate in Hotel W and that Easton Way is therefore deemed to have elected not to participate in Hotel W.

50. Section 3.5 of the Hilton LLC Agreement only permits Easton Way to accept or reject the material terms of MORSO's CP Offer Notices (other than increasing East Way's investment to 60%) and does not permit Easton Way to unilaterally alter the material terms of the CP Offer Notices to bestow management and control rights unto itself and its affiliates.

51. Section 3.5 of the Hilton LLC Agreement requires that an election to participate in a Competitive Project be on the terms proposed by MORSO, and only permits Easton Way to adjust its percentage ownership and, under limited conditions not applicable to Hotel W or Hotel S, substitute an alternative franchisor.

52. By conditioning its acceptance of the Hotel W offer upon new control and hotel management provisions that are not material terms offered by MORSO, Easton Way has failed to make a valid written election under Section 3.5 of the Hilton LLC Agreement, and as a result "**shall** be deemed to have elected not to enter into the Competitive Project." [Section 3.5(b) (emphasis added)]

53. A justiciable controversy exists concerning Easton Way's insistence on rights to control and manage the proposed new hotels even though the Hilton LLC Agreement provides no such rights, and declaratory relief from this Court will resolve this controversy and eliminate uncertainty created by the subject dispute.

54. As alleged herein, a real, substantial, and immediate controversy is presented regarding the rights, duties, and liabilities of the parties.

55. MORSO therefore requests declaratory judgment from this Court pursuant to Chapter 2721 of the Ohio Revised Code and Civil Rule 57 that (i) Easton Way has no right under the Hilton LLC Agreement to alter the terms of a CP Offer Notice made thereunder so as to provide Easton Way or its affiliate(s) control or management rights in a Competitive Project, (ii) that Easton Way is deemed to have elected not to enter into the Hotel W Competitive Project, and if Section 3.5 is applicable, (iii) that MORSO may proceed with the Hotel W Competitive Project by entering into an agreement for the development of such Competitive Project with an unrelated third party in an arm's length transaction for not less than ninety-five percent (95%) of the Proposed CP Investment for Hotel W and upon the other terms set forth in the Hotel W CP Offer Notice.

WHEREFORE, Plaintiff prays for the following relief:

(A) Judgment declaring that (i) the School Site (*i.e.*, Franklin County Parcel Number 010-015156-00) is not located within the "Restricted Area" within the meaning of the Hilton LLC Agreement, (ii) Hotel W and Hotel S therefore are not "Competitive Projects" within the meaning of the Hilton LLC Agreement, (iii) MORSO may develop one or more full service hotels on the School Site without the necessity of complying with the Competitive Project provisions of Section 3.5 of the Hilton LLC Agreement, and (iv) MORSO may proceed with development of Hotel W and Hotel S without participation by Easton Way.

(B) Judgment declaring that (i) Easton Way has no right under the Hilton LLC Agreement to alter the terms of a CP Offer Notice made thereunder so as to provide Easton Way or its affiliate(s) control or management rights in a Competitive Project, (ii) that Easton Way is deemed to have elected not to enter into the Hotel W Competitive Project, and, if Section 3.5 is applicable, (iii) that MORSO may proceed with the Hotel W Competitive Project by entering into an agreement for the development of such Competitive Project with an unrelated third party in an arm's length transaction for not less than ninety-five percent (95%) of the Proposed CP Investment for Hotel W and upon the other terms set forth in the Hotel W CP Offer Notice.

(C) That the Court expedite this action pursuant to the provisions of Chapter 2721 of the Ohio Revised Code and Civil Rule 57.

(D) An award of Plaintiff's costs pursuant to R.C. 2721.11.

(E) Such further relief as the Court deems proper and appropriate.

Respectfully submitted,

/s/ John W. Zeiger
John W. Zeiger (0010707)
Marion H. Little (0042679)
Daniel P. Mead (0083854)
ZEIGER, TIGGES & LITTLE LLP
3500 Huntington Center
41 South High Street
Columbus, Ohio 43215
Telephone: (614) 365-9900
Facsimile: (614) 365-7900
zeiger@litohio.com
little@litohio.com
mead@litohio.com

*Attorneys for Plaintiff MORSO Holding Co.*

612687